## CANADIAN AVIATOR, Limited, v. UNITED STATES.

### No. 223.

Circuit Court of Appeals, Second Circuit.

April 1, 1946.

---

[26] See also Rule 41(b).

Vincent A. Catoggio and John F. X. McGohey, U. S. Atty., both of New York City, for appellant.

Eugene Underwood and Burlingham, Veeder, Clark & Hupper, all of New York City, for appellee.

Before L. HAND, SWAN, and PHILLIPS, Circuit Judges.

PER CURIAM.

■ This was not a starboard hand crossing, for the vessels were not upon steady courses. The "Cavelier" was bound up stream, and in order to get on her course had to swing around to port substantially 180°. The "Stanton" was also bound up stream through the anchorage ground, a course which required her to pick her way through numerous anchored vessels. She argues, as we understand it, that, in spite of the veering that this entailed, her course—as distinct from her heading—was ascertainable by the "Cavelier," and was therefore steady; and, that it is not necessary that both vessels should be on steady courses, but only that the holding on vessel should be. At least, that is the only possible basis for the "Stanton's" position that this was a starboard hand situation. The rule has always been interpreted as limited to situations in which both vessels are on steady courses; and we are not disposed to import an exception. The duty of the holding on vessel to keep her course and speed is at times a trying one, and we do not think that she should be so bound when the other vessel is not on a steady course. We decide the case on the assumption that it was one of "special circumstances" under Article 27 of the Inland Rules, 33 U.S.C.A. § 212.

■ The faults of the "Cavelier" were in any event obvious. She was emerging from behind the tanker across the "Stanton's" projected path, and it was plainly wrong not to give any signal of her purpose. It is not necessary to say that a vessel getting under way after weighing anchor in an open anchorage leaves a "berth" within Rule V of Article 18, 33 U.S.C.A. § 203; but certainly when she is blanketed by another vessel from behind which she means to come out, all those considerations apply which demand a "slip whistle." Besides, there was no excuse for not seeing the "Stanton" as she approached; the "Stanton's" masts and stack were visible, as well as the top of her superstructure. The "Cavelier" neglected the most rudimentary precautions required for her navigation.

Nor can the "Stanton" excuse her failure to make out the "Cavelier" before she moved from behind the tanker. Just as the "Stanton's" masts, stack and superstructure were observable from the "Cavelier's" bridge, so were the "Cavelier's" from the "Stanton's." Nothing more surely catches the eye than a moving object across a field marked by stationary objects. Again, it would be unwarranted for us to declare "clearly erroneous" the judge's finding that the "Stanton's" speed was about seven knots; even Stegall, her chief mate, put her speed at about six knots. Precision on such an issue is unattainable; it is enough that the "Stanton" was moving too fast safely to thread her way over the water she chose. The libellant makes a very plausible argument that it was ipso facto negligence not to choose the channel. We need not go so far, but we do hold that she was charged with the utmost vigilance when she preferred the crowded anchorage to a channel which the judge found to be free of vessels. That measure of vigilance she was very far from discharging.

Decree affirmed.